FILED
2011 Jul-21  PM 01:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CARLOS R. WILLIAMS,            ) | |
|                              ) | |
|           Petitioner          ) | |
|                              ) | |
| v.                            ) | |
|                              ) | Case No. 2:10-cv-01069-RDP-HGD |
| J. C. GILES, WARDEN, and THE   ) | |
| ATTORNEY GENERAL OF THE        ) | |
| STATE OF ALABAMA,              ) | |
|                              ) | |
|           Respondents          ) | |

## REPORT AND RECOMMENDATION

Petitioner, Carlos R. Williams, has filed a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  He challenges the validity of his 2006 conviction in

the Circuit Court of Jefferson County on a charge of first degree robbery.

### FACTUAL AND PROCEDURAL BACKGROUND

Williams was arrested on January 11, 2005, for first degree robbery.[1]  The

grand jury returned an indictment charging Williams with first degree robbery on

---

[1] The arrest warrant also indicates that Anthony Archibald was a co-defendant.  (*See* Doc. 7-1, Record on Appeal, at 22-23).  In addition, the Incident Report lists only Anthony Archibald as a suspect.  (*Id.* at 48-49).

Page 1 of 22

June 17, 2005.[2]  On September 2, 2005, Williams appeared in court with his attorney, Michael Hanle, and entered a plea of not guilty.  On September 28, 2005, the State filed a notice of its intent to proceed under the Alabama Habitual Offender Act. (Doc. 7-1, Record on Appeal, at 31, 33).

Petitioner's trial by jury began on April 20, 2006.  Petitioner did not testify at trial.  After hearing all the evidence, the jury found petitioner guilty of first degree robbery.  A notice of appeal was filed on May 1, 2006.  On May 30, 2006, petitioner was sentenced to a term of life in prison as an habitual offender.

On June 29, 2006, petitioner's new attorney, Edward Tumlin, filed a Motion for New Trial, claiming petitioner received ineffective assistance of trial counsel. Specifically, the motion was based on claims that counsel:

> (1) did not challenge or cross-examine witnesses on the issue of identification;
>
> (2) did not call or subpoena the detective or reporting officer who could have testified that the victim gave the name and description of another person, Anthony Archibald, who looks similar to Williams but who was a different height and weight;
>
> (3) did not call witnesses who could testify that Williams had a low cut hair style rather than braids;

_____

[2] The indictment charged that petitioner, identified as Carlos R. Williams alias Carlos Ronell Williams, in the course of committing a theft of $250 and a Nissan automobile, used force or threatened the imminent use of force, with the intent to overcome the physical resistance or physical power of resistance of the victim or to compel acquiescence to the taking of or escaping with the property, while armed with a pistol.  (Doc. 7-1, Record on Appeal, at 20).

(4) did not call Williams' girlfriend (Valencia Anderson) who could have testified that she and Williams were staying in a hotel in Homewood and not on the southwest side of Birmingham, thus providing an alibi;

(5) did not get records from the hotel to show that Williams and Anderson were indeed staying there;

(6) did not get telephone records to show if the victim called witness Bender about getting or giving the name of Anthony Archibald to police;

(7) did not question or get the photographic lineup introduced into evidence where the victim identified Anthony Archibald, who looked very similar to Williams;

(8) did not argue that Anthony Archibald was the actual robber; and

(9) did not object or object properly to the introduction of evidence such as the photographic lineup containing Williams' photo.

(Doc. 7-1, Record on Appeal, at 42-43). After a hearing was held on the Motion for New Trial on August 9, 2006, the motion was denied summarily. (*See* Doc. 7-2, Transcript of Motion for New Trial Hearing).

On direct appeal, the sole ground raised was that the trial court erred in denying the Motion for New Trial. The Alabama Court of Criminal Appeals affirmed the conviction on May 18, 2007. In its opinion, the appellate court stated:

> The evidence adduced at trial indicated that Michael Hasberry, at the request of his friend, St. John Bender, III, agreed to give an acquaintance of Bender's a ride home. Bender knew the man by the name Carlos. Along the way, Carlos asked Hasberry to stop at a gasoline station so that

he could get cigarettes "or something like that." (R. 30.)
When he returned to Hasberry's vehicle, Carlos was
accompanied by a man, whom Carlos called "Ant-man,"
carrying a baby. "Ant-man" was later identified by Bender
as Anthony Archibald. Carlos got into the front passenger
seat of Hasberry's vehicle and Archibald and the baby got
into the back seat. Carlos asked Hasberry to give
Archibald and the baby a ride home as well, and Hasberry
agreed. When Hasberry reached his destination and
stopped his vehicle, Carlos quickly got out of the vehicle,
came to the driver's side, put a gun to Hasberry's head, and
forced him to empty his pockets. After giving Carlos
between $250 and $300 and throwing his cellular
telephone down, Hasberry fled and called police.
According to Hasberry, Archibald remained in the back
seat with the baby during the robbery and said nothing.
Bender identified Williams in court as the man he had
asked Hasberry to give a ride to and he testified that at the
time of the robbery Williams had dreadlocks or braids in
his hair. Hasberry identified Williams both in court and
from a pre-trial photographic line up as the man who had
put the gun to his head and robbed him. Hasberry also
testified that at the time of the robbery Williams had braids
in his hair. Bender testified at trial that Williams had
changed his hairstyle since the robbery.

(Doc. 7-3, Alabama Court of Criminal Appeals Opinion on Direct Appeal). The

appellate court noted Williams' argument that trial counsel should have sought to

admit a photograph of Archibald, who Williams claimed closely resembled him, to

create a reasonable doubt as to Hasberry's identification of Williams as the robber.

It also noted Williams' claim that counsel should have called Williams' mother and

girlfriend to testify that he did not have dreadlocks or braids at the time of the robbery and did not live on the side of town where the robbery occurred.

In rejecting the arguments on direct appeal, the appeals court pointed to testimony of trial counsel that he had no recollection of Williams ever mentioning that his mother and girlfriend were available to testify about Williams' hairstyle or residence.  Despite Williams' testimony to the contrary, the trial court credited Hanle's testimony over petitioner's, and the appellate court upheld this credibility choice.  It also stated that the record provided little support for a misidentification defense.  Both Bender and Hasberry positively identified Williams, and there was no evidence that Archibald directly participated in the robbery.  (*Id.*).  An application for rehearing was overruled on June 8, 2007, and petitioner did not file a petition for writ of certiorari.  (Doc. 7-4).

Williams subsequently filed a petition for post-conviction relief pursuant to Rule 32, Ala.R.Crim.P.  As grounds, he asserted:

(1) he was denied the right to testify in his own defense at trial;

(2) he received ineffective assistance of trial counsel because:

> (a) counsel refused to allow him to testify at trial despite his requests;
> (b) counsel failed to object to the introduction into evidence of a photographic lineup in that he did not subpoena the detective who took the photographic lineup and did not object when the trial court did not require the

detective's presence after the trial court inquired as to his whereabouts;

(c) counsel did not argue that no statement or interview showed Williams' name on it, other than the photographic lineup;

(d) counsel did not move to introduce a second photographic lineup which contained the photograph of the other suspect, Anthony Archibald;

(e) counsel did not challenge alleged misspellings of Williams' name in the indictment or photographic lineup;

(f) counsel did not move for a mistrial on the grounds that the victim of the robbery remained in the courtroom and heard testimony even though the trial court had invoked the Rule;

(g) counsel did not request that the trial court instruct the jury on the lesser included offense of second degree robbery because there was another participant in the robbery; and

(h) counsel did not preserve "several claims for [appellate] review by timely objecting to the claimed errors" and he did not properly investigate the case, interview witnesses, consult with Williams, or undertake efforts to prepare a proper defense;

(3) there was a variance between the indictment and the evidence at trial in that the victim's testimony indicated he was robbed by two men;

(4) he was denied the right to confront and cross-examine the detective who initially identified him as the perpetrator;

(5) he was denied the right to counsel during the photographic lineup after repeatedly requesting an attorney;

(6) the trial court erred in not *sua sponte* instructing the jury on second-degree robbery as a lesser-included offense of first degree robbery;

(7) the State failed to prove a *prima facie* case of first degree robbery;

(8) appellate counsel was ineffective for not arguing in a motion for a new trial and again on appeal that his trial counsel was ineffective for not allowing Williams to testify at trial; and

(9) the cumulative effect of not allowing Williams to testify in his own defense, and failure to raise this as a ground of ineffective assistance of counsel in the motion for new trial and on direct appeal, deprived Williams of his right to effective assistance of counsel.

(Doc. 7-5, Rule 32 Record, at 24-56; Doc. 7-6, Rule 32 Record, at 107-09).

As part of the State's response to the petition, its submitted the affidavit of Michael Hanle. (Doc. 7-6, Rule 32 Record, at 116-18). He stated that he met with Williams on numerous occasions to discuss the case and review evidence, and during one of those meetings, Williams indicated he wanted to testify. Hanle informed Williams of his right to testify or not, but that if he did testify, the jury would hear about his multiple prior felony convictions for theft-related offenses. Hanle told Williams that he would not stop Williams if he wanted to testify, but no decision was made at that time. At the close of the State's case, Hanle stated he and Williams again discussed whether Williams would testify, and Williams indicated he decided against it by shaking his head, without any threats by Hanle to quit if Williams opted to take the stand.

The trial court held an evidentiary hearing on the Rule 32 petition (*see* Doc. 7-6, Rule 32 Record), after which an order was entered on December 3, 2007, denying the petition. (Doc. 7-5, Rule 32 Record, at 9). The sole testimony heard by

the court came from petitioner; Mr. Hanle did not testify but instead only submitted an affidavit.  In contrast, petitioner testified that he told Hanle several times before trial that he wanted to testify.  Then, after the State rested its case, petitioner again insisted that he wanted to take the stand in his defense because the State's witnesses were not telling the truth.  Williams thought that Hanle was going to allow him to testify and was surprised when Hanle rested without calling Williams.  Williams further testified he did not know he could tell the court of his desire to testify until after the trial was over.

The trial court held that (1) there was no variance between the indictment and trial testimony; (2) there was sufficient testimony at trial to meet the facts as alleged in the indictment, and a jury charge on second degree robbery was not appropriate under the facts of the case; (3) there was no ineffective assistance of counsel with respect to the second photographic lineup and the failure to subpoena the detective who prepared the lineup was trial strategy; (4) Mr. Hanle never was informed by Williams at trial that Williams wanted to testify, and Mr. Tomlin was never told that Mr. Hanle prevented Williams from testifying at trial; and (5) the trial court had no duty to determine *sua sponte* whether Williams was waiving his right to testify at trial.

Petitioner appealed the denial of collateral relief.[3]  On October 24, 2008, the Alabama Court of Criminal Appeals affirmed the denial of relief on all grounds asserted.  (Doc. 7-8, Alabama Court of Criminal Appeals Opinion on Rule 32 Appeal).  In its opinion, the appellate court determined that Williams' testimony at the Rule 32 hearing was limited to the claims that (1) trial counsel was ineffective for not allowing Williams to testify at trial and (2) appellate counsel was ineffective for not arguing in a motion for new trial and on appeal that trial counsel was ineffective for not allowing Williams to testify at trial.  It also noted that some argument was presented by counsel as to these two claims, as well as the claims that trial counsel was ineffective for not seeking to introduce the second photographic lineup containing Archibald's photograph, Williams was denied the right to confront and cross-examine the detective who initially identified him as the perpetrator, and the court erred in not instructing the jury *sua sponte* on second degree robbery.  Williams stood on the remainder of the Rule 32 claims as they were set out in the Rule 32 petition.

_____

[3] The claims raised by petitioner on appeal of the denial of the Rule 32 petition were (1) whether his constitutional right to testify on his own behalf was violated outright or as a result of ineffective assistance of counsel at trial and on appeal; (2) whether petitioner received ineffective assistance of counsel because no jury instruction was given on second degree robbery and appellate counsel failed to raise the argument on direct appeal; and (3) whether the combined or cumulative effect of the acts and omissions of trial and direct appellate counsel constituted ineffective assistance of counsel.  (Doc. 7-11, Petitioner's Brief on Rule 32 Appeal).

With respect to Williams' claim that he was not allowed to testify and that his attorney rendered ineffective assistance of counsel in not allowing him to testify, the appellate court discussed the affidavits of Williams and his mother and girlfriend and the hearing testimony of Williams, in addition to the affidavit from Mr. Hanle. The appellate court concluded that the trial court was presented with conflicting evidence and resolved the credibility choices adversely to Williams. It stated that "the affidavit of Williams's trial counsel supports the circuit court's findings of fact and ruling on the merits that Williams had not informed his trial counsel 'at trial that he wanted to testify at trial.'" (Doc. 7-8, Alabama Court of Criminal Appeals Opinion on Rule 32 Appeal, at 8).

The appeals court also rejected Williams' contention that, in every case in which the defense indicates the accused will not testify, the trial court should *sua sponte* conduct a colloquy with the accused to make sure it is a voluntary and knowing choice. The claim that the trial court should have instructed the jury on second degree robbery was rejected because there was no evidence presented in the Rule 32 hearing to support the claim, and the ancillary claim that appellate counsel should have raised the issue on direct appeal was rejected as being raised for the first time in the Rule 32 appeal. Turning to the underlying substantive claim about the propriety of a second degree robbery instruction, the appellate court held that the

claim was procedurally barred because it should have been, but was not, raised at trial or on direct appeal. In the alternative, the appellate court upheld the determinations on the merits that there was no variance between the indictment and evidence, that the evidence supported an instruction on first degree robbery but not on second degree robbery, and that the State presented a *prima facie* case of first degree robbery. The appeals court also found that the claim of ineffective assistance of trial counsel for not seeking a second degree robbery charge was not supported by evidence at the Rule 32 hearing and, at any rate, the underlying allegation was without merit. The claim of cumulative ineffective assistance of counsel was determined to be barred because it was not raised in the Rule 32 petition and, alternatively, was held to be without merit because petitioner had not met his burden of proving that counsel was ineffective as to any of the individual grounds alleged in the Rule 32 petition. Any other claims not argued on appeal were deemed abandoned by the appeals court.

An application for rehearing was denied on December 5, 2008. In his petition for writ of certiorari, Williams challenged only the adverse decision on his claim regarding the denial of his right to testify and whether counsel was ineffective for not raising it on direct appeal. He also invited the court to find that the trial court should conduct a colloquy to ensure that a defendant has knowingly and voluntarily waived

his right to testify.  (Doc. 7-9, Petition for Writ of Certiorari).  The Alabama Supreme

Court denied the petition for writ of certiorari on April 10, 2009.

Williams filed the instant petition for writ of habeas corpus on March 31, 2010.

As grounds, he asserts:

(1) the trial court erred in denying his motion for a new trial on ineffective assistance of counsel grounds because he was deprived of his constitutional right to testify in his defense at trial;

(2) he was denied effective assistance of counsel because trial counsel refused to allow him to testify despite his requests to testify;

(3) he was denied effective assistance of counsel because trial counsel failed to object to the introduction of a photographic lineup in that he did not subpoena the detective who took the photographic lineup and did not object when the trial court did not require the detective's presence after the trial court inquired as to his whereabouts;

(4) he was denied effective assistance of counsel because trial counsel did not argue that no statement or interview showed petitioner's name on it, other than the photographic lineup;

(5) he was denied effective assistance of counsel because trial counsel did not move to introduce a second photographic lineup which contained the photograph of a second suspect, Anthony Archibald;

(6) he was denied effective assistance of counsel because trial counsel did not challenge alleged misspellings of Williams' name in the indictment and photographic lineup;

(7) he was denied effective assistance of counsel because trial counsel did not move for a mistrial on the grounds that the victim of the robbery remained in the courtroom and heard testimony even though the trial court had invoked the Rule;

(8) he was denied effective assistance of counsel because trial counsel failed to request the trial court instruct the jury on the lesser-included offense of second degree robbery because there was another participant in the robbery;

(9) he was denied effective assistance of counsel because trial counsel did not properly investigate the case, interview witnesses, consult with Williams, or undertake efforts to prepare a proper defense, and counsel failed to determine if petitioner had any witnesses who could provide an alibi defense;

(10) there was a variance between the indictment and the evidence at trial;

(11) he was denied the right to confront and cross-examine the detective who initially identified him as the perpetrator;

(12) the trial court erred in not *sua sponte* instructing the jury on second degree robbery as a lesser-included offense of first degree robbery;

(13) the State failed to prove a *prima facie* case of first degree robbery; and

(14) he was denied effective assistance of appellate counsel because his counsel did not argue in a motion for a new trial and again on appeal that trial counsel was ineffective for not allowing Williams to testify at trial.

In response, respondents contend that all issues raised on direct appeal are procedurally defaulted because petitioner did not file a petition for writ of certiorari as part of the direct appeal. They also assert that all Rule 32 grounds not raised in the petition for writ of certiorari in the Rule 32 proceedings are also procedurally defaulted. Thus, respondents contend that only claims (1), (2) and (14) are properly

before this court for consideration.  As to these claims, respondents rely on the rejection by the state courts of the merits of petitioner's contention that Mr. Hanle did not allow him to testify at trial after petitioner advised Hanle of his desire to take the stand in his own defense.

DISCUSSION

## Procedural Default

A state habeas corpus petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default.  *Wainright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).  In *Coleman v. Thompson*, the Court said "[I]f the Petitioner failed to exhaust state remedies and the court to which Petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,] there is a procedural default for purposes of federal habeas."  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1, 111 S.Ct. 2546, 2557 n.1, 115 L.Ed.2d 640 (1991).  So long as the procedural default rests on adequate and independent state grounds, the petitioner is generally barred from obtaining federal habeas review of the defaulted claim.  *Id*. at 729-31, 111 S.Ct. at 2553-55.  In *Coleman*, the Court also stated "[i]n the habeas

context, the application of the adequate and independent state ground doctrine is grounded in concerns of comity and federalism.  . . .  In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court." *Id.*  Title 28 U.S.C. § 2254(b)(1)(A) also requires that a federal habeas petitioner exhaust his remedies in the state court system.

Here, petitioner failed to exhaust claims (3) through (13) in the state court system, so those claims are now procedurally defaulted and barred from federal habeas review.  Petitioner failed to file a petition for writ of certiorari as part of his direct appeal; therefore, claim (5) is barred from consideration on the merits.

He also failed to raise any claim but those relating to the alleged denial of his right to testify in the petition for a writ of certiorari after the Alabama Court of Criminal Appeals affirmed the denial of his Rule 32 petition; thus, these issues are deemed to have been abandoned.  *See Doyle v. Dugger*, 922 F.2d 646, 649-50 n.1 (11th Cir. 1991); *Collier v. Jones*, 910 F.2d 770 (11th Cir. 1990).  Because an appeal to the Alabama Supreme Court is a normal, simple, and established part of Alabama's appellate review process, claims not raised in an appeal of Alabama Court of Criminal Appeals decisions on direct appeal or in a collateral proceeding (*i.e.*, a Rule 32 petition) to the Alabama Supreme Court cannot be raised in a subsequent federal

habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Smith v. Jones*, 256 F.3d 1135, 1140-41 (11th Cir. 2001) (failure to pursue issue on direct appeal); *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (failure to pursue issue on collateral appeal).

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. at 750, 111 S.Ct. at 2565. To show cause for procedural default, the petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). Petitioner has failed to make any such showing as to his procedurally defaulted claims.

Based on the foregoing, it is RECOMMENDED that habeas corpus relief be DENIED as to Claims (3) through (13) asserted by petitioner.

**Denial of Right to Testify**

Respondents assert that the Rule 32 court and Alabama Court of Criminal Appeals specifically found that Williams' claim that he was not allowed to testify despite his request to do so was without merit. The state courts reached this conclusion based on the affidavit of Williams' trial attorney stating that Williams was aware of his right to testify, but he elected not to do so at trial after the State rested its case.

However, respondents and the Alabama Court of Criminal Appeals seem to have missed or ignored the fact that petitioner testified at the Rule 32 hearing that he told his attorney that he wanted to take the stand in his defense because the State's witnesses testified falsely. The mere affidavit of petitioner's trial counsel refuting that live testimony is not a sufficient basis for making a credibility choice. Consequently, contrary to the findings of the trial court, there exist two opposing versions as to whether petitioner told trial counsel that he wanted to testify in his own defense. Finding the affidavit submitted by trial counsel to be dispositive of this claim is, in essence, the making of a credibility determination and finding of fact, favoring trial counsel's affidavit over Williams' testimony at the evidentiary hearing.

Title 28 U.S.C. § 2254(d)(2) provides for habeas relief where a claim, adjudicated on its merits in a state court proceeding, "resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1).[4] The Alabama Supreme Court has admonished that, in civil cases, neither the trial court nor a reviewing court "may undertake credibility assessments in reviewing testimonial evidence submitted in favor of, and in opposition to, a motion for a summary judgment." *Lyons v. Walker Reg'l Med. Ctr.*, 868 So.2d 1071, 1077 (Ala. 2003). While a Rule 32 proceeding under Alabama law is quasi-criminal, the rule regarding credibility determinations in summary judgment proceedings is instructive where, as here, the court is credited with having made a credibility decision without first taking testimony from petitioner <u>and</u> trial counsel in order to have a basis for such a judgment. Furthermore, in *Smith v. Zant*, 887 F.2d 1407 (11th Cir. 1989) (*en banc*) (Kravitch, J., concurring in part and dissenting in part), there was an observation taken from the panel's original decision in the case[5] on the appropriateness of a trial court making a credibility determination when its only basis was the affidavit of the witness:

> We fail to see how the state habeas court could have made a decision on [the witness'] credibility when [the witness] never gave oral testimony. We previously have expressed doubts as to whether a credibility determination can be

---

[4] A determination as to whether a particular statement in fact was made generally is entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1).

[5] *Smith v. Zant*, 855 F.2d 712 (11th Cir. 1988), *reh'g granted and opinion vacated*, 873 F.2d 253 (11th Cir. 1989), *on reh'g*, 887 F.2d 1407 (11th Cir. 1989) (*en banc*).

> fairly made on a paper record.  *See Agee v. White*, 809 F.2d
> 1487, 1494 n.3 (11th Cir. 1987).

*Id.* at 1433 n.15.

In *Agee*, cited above, the Eleventh Circuit questioned whether a presumption of correctness would attach to a finding that a statement was made, "since it essentially would be a credibility determination based upon nothing more than a 'paper' record of conflicting testimony.  *See* 28 U.S.C. § 2254(d)(2) (no presumption where 'factfinding procedure employed by the state was not adequate to afford a full and fair hearing')."[6]   In this case, Mr. Hanle never testified, subject to cross-examination, about any conversations with petitioner, petitioner's mother or petitioner's girlfriend about petitioner's desire to testify at his trial.

Therefore, the undersigned magistrate judge concludes that the decision on the merits of this issue by the Alabama Court of Criminal Appeals has resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Pursuant to Rule 7 of the *Rules Governing Habeas Corpus Cases Under Section 2254*, it is RECOMMENDED that a hearing be held before the undersigned for the purpose of determining the viability

---

[6] The cases cited by the Alabama Court of Criminal Appeals in its opinion affirming the denial of Rule 32 relief, to support the credibility choice made by the trial court, involved hearings in which the courts actually heard live testimony from all the witnesses.  None of the cited cases involved a court making a credibility choice between a live witness and an affidavit.

of petitioner's claim that trial counsel failed to call petitioner as a witness in his own

defense despite his stated desire to do so.[7]

_____

[7] According to the Eleventh Circuit:

Because it is primarily the responsibility of defense counsel to advise the defendant of his right to testify and thereby to ensure that the right is protected, we believe the appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In *Strickland,* the Supreme Court defined two requirements for a claim of ineffective assistance of counsel:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id*. at 687, 104 S.Ct. at 2064.

The first prong of this test requires that defendant show that counsel's performance "fell below an objective standard of reasonableness." *Id*. at 688, 104 S.Ct. at 2065. Where the defendant claims a violation of his right to testify by defense counsel, the essence of the claim is that the action or inaction of the attorney deprived the defendant of the ability to choose whether or not to testify in his own behalf. In other words, by not protecting the defendant's right to testify, defense counsel's performance fell below the constitutional minimum, thereby violating the first prong of the *Strickland* test. For example, if defense counsel refused to accept the defendant's decision to testify and would not call him to the stand, counsel would have acted unethically to prevent the defendant from exercising his fundamental constitutional right to testify. Alternatively, if defense counsel never informed the defendant of the right to testify, and that the ultimate decision belongs to the defendant, counsel would have neglected the vital professional responsibility of ensuring that the defendant's right to testify is protected and that any waiver of that

Page 20 of  22

## NOTICE OF RIGHT TO OBJECT

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court.  Failure to do so will bar any later challenge or review of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*).  In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and

---

right is knowing and voluntary.  Under such circumstances, defense counsel has not acted "'within the range of competence demanded of attorneys in criminal cases,'" and the defendant clearly has not received reasonably effective assistance of counsel. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064 (quoting *McMann v. Richardson*, 397 U.S. 759, 770-71, 90 S.Ct. 1441, 1448-49, 25 L.Ed.2d 763 (1970)).

*United States v. Teague*, 953 F.2d 1525, 1534 (11th Cir. 1992).

may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge.  The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

DONE this 21st day of July, 2011.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE